# PERKINS v. PRUDENTIAL INS. CO. OF AMERICA.

## No. 4979.

Circuit Court of Appeals, Seventh Circuit.

Jan. 19, 1934.

Rehearing Denied Feb. 28, 1934.

SPARKS, Circuit Judge.

Appellee filed its bill in equity to rescind for fraud the reinstatement of a policy of life insurance. A jury trial was had, but at the close of the evidence, upon motion of appellee for a decree in its behalf, and a similar motion on the part of appellant for a decree in behalf of herself, the court discharged the jury and rendered a decree in favor of appellee, holding the reinstatement void and enjoining appellant from prosecuting any action under the policy. Appellant appeals from that decree.

The principal errors relied upon by appellant have to do with the overruling of her motion to dismiss the bill for want of equity, the discharge of the jury prior to its withdrawal to consider a verdict, and the findings of fact and conclusions of law as rendered by the trial court.

The basis of the appellant's motion to dismiss the bill for want of equity lay in the theory that appellee had an adequate remedy at law. If the appellant had rested there, relying upon that defense, it might perhaps be that the decree should have been rendered in her favor, although by far the majority of cases in the federal courts have held to the contrary. It is unnecessary for us to decide that question, however, for the reason that appellant did not rest there, but instead, when her motion was denied, she filed an answer which included a prayer for affirmative relief, namely, the rendering of a judgment in her favor for $5,000, the amount of the policy in question. The Supreme Court has held that where a defendant in an equity action might rely upon the defense of the adequacy of the remedy at law, he waives such defense by interposing a counterclaim in his answer. Amer. Mills Co. v. Amer. Surety Co., 260 U. S. 360, 43 S. Ct. 149, 67 L. Ed. 306. This case seems to be squarely in point with the case at bar. There also the defendant, having been overruled in its motion to dismiss the action on the ground that the complainant had an adequate remedy at law, sought affirmative relief under the instrument put in controversy by the complainant, and it was held that by so doing it waived the defect and conferred jurisdiction upon the court of equity to settle all issues arising out of the transaction. See also Kishi et al. v. Humble Oil & Refining Co. et al. (C. C. A.) 298 F. 218. We are bound by the authority of these cases to hold that regardless of whether or not appellee had an adequate remedy at law to which it should have been relegated, appellant waived her right to make use of that defense by her

Jacob J. Kern, and Charles W. Stiefel, Jr., both of Chicago, Ill., for appellant.

Thomas M. Hoyne and Nathaniel Rubinkam, both of Chicago, Ill., for appellee.

Before EVANS, SPARKS, and FITZ HENRY, Circuit Judges.

action in incorporating in her answer a prayer for affirmative relief based on a legal cause of action. By so doing she permitted the court of equity to take jurisdiction of all the issues and render a final decree on them.

■■■ Appellant also objects to the discharge of the jury before its retirement to consider a verdict. However, the record shows that at the close of the evidence both appellee and appellant moved for a finding by the court, and did nothing further. As stated in Williams v. Vreeland, 250 U. S. 295, 39 S. Ct. 438, 439, 63 L. Ed. 989, 3 A. L. R. 1038, "The established rule is: 'Where both parties request a peremptory instruction and do nothing more they thereby assume the facts to be undisputed and, in effect, submit to the trial judge the determination of the inferences proper to be drawn therefrom.' And upon review, a finding of fact by the trial court under such circumstances must stand if the record discloses substantial evidence to support it." Hence we hold that there was no error in the action of the court in discharging the jury and rendering findings of fact and conclusions of law based upon them.

■■■ This latter ruling also settles the question of the third principal error assigned by appellant, namely, the one based upon the findings of fact as rendered by the trial court. The evidence showed that the policy in question was issued to Evan J. Perkins, Jr., husband of the appellant, on July 24, 1930. It provided for a death indemnity of $5,000, and the premiums were payable quarterly. The policy lapsed on January 24, 1931, for non-payment of the premium due on that date, and was reinstated on March 5, 1931. A further default occurred when the premium became due on July 24, 1931. This premium was not paid until September 23, 1931, when insured signed the application for reinstatement now in question. This application stated that he was in good health, and that since the date of issue of the original policy he had had no illness nor injury, and had not had any medical or surgical treatment at his home or at any hospital. Insured died on December 8, 1931, from toxic hyperthyroidism. Upon investigation following his death, appellee found that he had consulted a physician on September 8, 1931, complaining of loss of weight, indigestion, nervousness, inability to sleep, and a slight weakness in both lower extremities. A metabolism test was taken at a hospital. This test indicated that insured was suffering from a toxic goiter. He was not, however, informed of the significance of this condition. He was placed under treatment, including medication. For a time his condition improved, but by November 2, he was much worse again, and a few days later he was sent to a hospital where he died. Appellee introduced evidence of these facts to prove the misrepresentation on the part of the insured as to his physical condition, and that his death resulted directly from the condition which he concealed from appellee when applying for the reinstatement of his policy. As soon as it found out these facts, appellee notified appellant, the beneficiary under the policy, that it was rescinding the policy on the ground of fraud, and tendered back the premiums paid following the reinstatement of it.

These facts constitute substantial evidence that there was fraud involved in the reinstatement of the policy in suit. It is true that there was also evidence introduced to show that the misstatements were actually written into the application by appellee's agent rather than by the insured, who appellant alleged merely signed the application for reinstatement as prepared by the agent who did not ask the questions contained therein. This evidence was controverted by evidence offered by appellee that the agent filled in the application by the answers given by insured himself. However, the fact remains that the questions were not answered correctly, and that if they had been, they would have revealed the fact that the insured had been under the care of a physician during the period while the policy was not in force because of non-payment of premiums. Appellant argues that insured did not know of the seriousness of his condition, hence would have been guilty of no fraud even if he had answered the questions himself. Her theory is that the questions in the application have reference only to serious illnesses, and in effect means that an insured is not bound to disclose every minor ailment which he considers would have no bearing on the risk. With this theory we can not agree. The application asks certain specific questions as to whether or not the insured is in good health, whether he has had any illness or injury since the policy was issued, and whether he has had any medical or surgical treatment. It does not qualify these questions with reference to the seriousness of conditions for which the insured may have been under medical or surgical care. Certainly the insurer does not expect to permit its insured to be the judge of that in all cases, and to assume the burden of proving in any case where a negative answer was given that insured knew that in fact the condition for which he had consulted a physician was a

serious one. The first question referred to here might well be considered as calling for an answer as to insured's own idea of his state of health, but the second and third are in a different category. The insurer has a right to know whether the insured has had occasion to consult a physician for any reason whatsoever, and to find out for itself whether or not the risk has been impaired since it first issued the policy. The case at bar illustrates the necessity of that very well, for the record shows that physicians consulted by decedent found it necessary to reassure him as to his condition for the very reason that it was so serious that had he been aware of the seriousness, his worry over it would have been likely to render it even more serious. The policy provided that reinstatement after lapse was to be on condition that the insured furnish evidence of insurability satisfactory to the insurer. The insurer had a right to question any physicians consulted by the insured since the policy was issued in order to determine for itself whether it still wished to carry the risk. Even if the insured did not write the answers to the questions himself, as contended by appellant, he at least signed the application on which the answers were written, and this application contained a certification that the statements and answers were made by him to induce the insurer to reinstate the policy, and that they were all true. By signing this certification, the insured may be said to have adopted the answers as his own, even if he did not write them or even know what they were when he signed the application. See N. Y. Life Ins. Co. v. Fletcher, 117 U. S. 519, 6 S. Ct. 837, 29 L. Ed. 934; Mutual Life Ins. Co. v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; Franco et al. v. N. Y. Life Ins. Co. (C. C. A.) 53 F.(2d) 562.

Appellant also contends that appellee did not make proper tender of the premiums, having offered only $27.15, the amount paid at the time the policy was reinstated, although another premium was paid after that time. However, the record discloses that appellant herself testified that a Mr. Snodgrass, an agent of appellee, offered her $54.30 on January 30, 1932, stating that the Company authorized him to give her that amount in settlement of her claim. The bill of complaint contains the following offer:

" *  *  * The plaintiff now comes and offers to pay said Kathryn L. Perkins * * * the amount of premiums paid on the reinstatement of said policy in order to restore the parties to the situation in which each and all of them stood prior to said purported reinstatement. The plaintiff also offers to do whatever else, if anything, it ought to do in the premises to obtain cancellation of the original policy which defendant herein yet holds. *  *  * "

These offers we think satisfy the requirement that the insurer tender a refund of premiums before it is entitled to equitable relief by the rescission of its policy on the ground of fraud. In view of the fact that two premiums were paid after the reinstatement of the policy which appellee seeks to cancel, equity demands that those payments amounting to $54.30 should be refunded by appellee. The decree is therefore affirmed with directions that it be modified by conditioning it upon payment of $54.30 by appellee to appellant or to the Clerk of the District Court for appellant's benefit, within thirty days from this date.

### On Petition for Rehearing.

Appellant in her petition for rehearing again urges error in the action of the District Court in discharging the jury without permitting it to determine the issues of fact. There was no error in this. The action was in a court of equity where it is a matter of discretion as to whether a jury will be used at all. Idaho & Oregon Land Improvement Co. v. Bradbury, 132 U. S. 509, 10 S. Ct. 177, 33 L. Ed. 433. Even if the court does submit the issues to the jury, the verdict is not binding upon the court, and may be followed or disregarded in the discretion of the court. Kohn v. McNulta, 147 U. S. 238, 13 S. Ct. 298, 37 L. Ed. 150. Hence it must follow that even if a jury is permitted to hear the evidence it is not mandatory upon the court to submit the case to that jury if after hearing the evidence it chooses not to do so.

Counsel further charges that the court erred in stating that appellant's motion for judgment was made before the jury was discharged. That statement, however, does not appear in the opinion. Appellant is right, however, in stating that her motion was made otherwise, but that fact cannot form the basis of error with respect to discharging the jury in an equitable proceeding.

Appellant further insists that appellee's tender was ineffective because the original tender was not kept good by paying the money into court. This might be true with respect to an action at law, but it has no application to an equitable tender.

Appellant also contends that this court failed to consider one of the errors as-

signed by her, namely, that appellee waived any right it might have had to set aside the reinstatement of the policy by accepting a premium after it became known to appellee's agent that the insured was not in good health. It is obvious that if the incontestable clause is to mean anything at all it must mean that the insurer has an absolute right any time during the limited period to take action to set the policy aside for fraud in its procurement or in its reinstatement. This right would not mean much if the insurer could be bound by the action of its local agents in ratifying a reinstatement before the facts came to the knowledge of the company itself. This is especially true in view of the contract provisions that no condition, provision or privilege of the policy could be waived except by written endorsement of certain named officials, and that no agent had power to waive any forfeiture.

The petition for rehearing is overruled.