ELLIS, Judge.
Plaintiff appealed from a judgment of the District Court in favor of the defendant, Vida Sugars, Inc., and Coal Operators Casualty Company, dismissing and rejecting his demand.
Plaintiff sued for damages as the result of an accident and injuries which occurred on Nov. 11, 1952, during the course of the unloading of a truck of cane which plaintiff had hauled for his employer, Howard Breaux, to the defendant’s mill.
Plaintiff has alleged that he has been rendered totally and permanently disabled and that he was without actual knowledge as to how the accident occurred, and since the operation of unloading the truck was under the complete control and direction of the employees of the defendant, the latter had superior knowledge over that of the plaintiff and, therefore, he expressly 'pleads the doctrine of res ipsa loquitur. In the alternative plaintiff alleged that the accident, damages and injuries resulting therefrom were due to the gross negligence and 'carelessness on the part of the defendant and/or its employees, which negligence constituted the sole and proximate cause of the accident in the following respects:
(a) In the negligent and careless method of operating the derrick hoist by lifting the cane over the front cab of the truck where the driver was standing;
(b) In the negligent and careless operation of the derrick hoist by the sudden release of the clutch and application of the brake causing the load to jerk and break the chain;
(c) In its failure to park the truck sought to be unloaded in a safe position where the cane could be removed by hoist without passing over the cab of the truck and the driver thereof;
(d) In requiring the driver of the truck to stand near the cab (an inherently dangerous position) for the purpose of unhooking the chain after the cane had been dumped and replacing the chain in the truck ;
(e) In not providing sufficient employees for the purpose of unhooking the chain after the cane had been tripped to repláce the chain in the truck for the driver thereof;
(f) In not providing safety measures for the protection of cane drivers engaged in this operation, a dangerous operation, connected with the management of a sugar factory, knowing that said operation resulted frequently in the breaking of chains during unloading process.
Defendant’s answer was a general denial and in the alternative .a plea of contributory negligence and assumption of risk on the part of the plaintiff.
The District Judge found from the facts that the doctrine of res ipsa loquitur was not applicable and also that the plaintiff’s injuries were due solely and proximately to his own negligence and assumption of risk, in standing where he did. -
*225 The record reveals that the plaintiff was employed by Howard Breaux as the driver of a cane truck engaged in hauling his employer’s cane to the defendant’s mill. The cane was loaded in the field of his employer presumably by the latter’s employees. In any event the defendant company had nothing whatever to do with the loading of Breaux’ cane into the truck. The chains were laid and the cane placed on them in such a manner that the chains could be fastened around it. The cane was then lifted by a derrick or other means in the field and in this process the chains tightened around the bundle of cane and it was placed on the truck body. It is shown that each bundle weighed approximately four or five tons and there were several bundles to the truck. The plaintiff drove the Breaux truck onto the premises of the defendant company and parked it in position for the derrick man operating the hoist to swing the derrick over and down to the bundles of cane in the truck where an employee of the defendant would hook the hoist chain to the chain surrounding the bundle of cane, then the defendant’s derrick man would lift the bundle from the truck and swing it to' the cane stack. After the cane had been swung and dropped on the stack, another employee of defendant would release the chain from the cane and the derrick man would swing the chain back to the side of the truck and drop it and the truck driver would pick the chain up and put it on his truck.
The defendant company had loaned Breaux chains to be used in bundling and loading the cane in the fields, however, Breaux also had chains of his own and there is no proof in the record as to whether the chain which broke while the truck operated by plaintiff was being unloaded belonged to the defendant or to Breaux.
This accident occurred on the morning of Nov. 11, 1952, when the derrick man at the defendant company was lifting the first bundle of cane out of the truck driven by plaintiff. - It appears that plaintiff, after placing the truck for unloading, had gotten out of the cab and walked to the front of the truck and was talking to the employee, of the defendant company when the derrick man lifted the bundle of cane and as he swung it over the side of the truck the chain broke and it is not clear whether the chain whipped out and struck the plaintiff on the head or whether a portion of the chain completely broke off and was slung through the air and struck him on the head.
The breaking of these chains in which the cane is bundled in the unloading process is rather a common • occurrence at all of the sugar mills, and the unloading is recognized as a most dangerous operation. The testimony shows that these chains in which the cane is wrapped for loading into the trucks break on account of being twisted or due to cold weather, jerking by the operator of the hoist when the brakes are applied or metal fatigue. In other words, if the chain which had been placed around this bundle of cane in Breaux’ field at the time of its loading was twisted on the bottom it could not be detected by the employees of the defendant. It is also shown that if the man who hooks the hoist to the bundle 'should twist the chain on top it might break. However, the employee’ who performed this duty testified positively that he had not hooked the chain with a twist. Under the facts' in this case the learned Judge of the District Court has fully discussed the inapplicability of the doctrine of res ipsa loquitur and given full reasons for his refusal to apply this doctrine and we quote:
“Plaintiff relies upon the doctrine of res ipsa loquitur and defendant Vida’s negligence. The Court cannot see that the doctrine applies and that Vida was in any way negligent.
“To apply the doctrine, the Court must conclude that the accident would not ordinarily have occurred in the absence of negligence on’the part of Vida, and the’ accident must have been proximately caused by an instrumentality, over which Vida had exclusive control. Alexander v. City of Shreveport, 1944, 205 La. 480, 17 So.2d 716, 718 (s. 4).
“The record clearly shows that Vida did not have complete control of anything; ex *226 cept the hoist. . The cane was loaded in Howard Breaux’s field, by Breaux’s employees, it may well be with Breaux’s chains. The bundle of cane was completely made up, ready to be hoisted, in Breaux’s field, by Breaux’s employee. The record shows that all chains break, and, certainly, that is not true only of Vida’s chains.
“The record shows that Viltz, who operated the hoist at Vida’s, is, according to the testimony of plaintiff’s own witnesses, one of the best operators in the business. Viltz hoisted this particular load in his same, usual, careful manner. There was no jerking of the load by him and he did nothing at all that would have caused the chain to break, because of negligence on his part. We copy of the following from Dunaway v. Maroun [La.]App. 2 Cir., 1938, 178 So. [710], 711:
“ ‘(3-6) Blashfield’s 'Cyclopedia of Automobile Law & Practice, Volume 9, §§ 6043, 6048, 6046, verbo “Res Ipsa Loquitur Rule,” carries a cogent discussion of the doctrine in all of its phases, which he supports by citing decisions from many states of the Union. The following quotations excerpted from what he has to say, in our opinion, correctly reflect the operative effect of the rule in the respects mentioned, and apply to the facts of the present case: “When both the apparatus and the operation of it are in the control of the defendant, and the accident is one which ordinarily could not happen except by reason of defects in the apparatus or negligence in its operation, a presumption of one or the other arises from the happening of the accident. However, there are exceptions even to this rule. The application of the rule depends upon the circumstances in the particular case.
“ ‘ “The rule will not be applied where the evidence discloses that the injury might have occurred by reason of the concurrent negligence of two or more persons or causes, one of which was not under the management and control of the defendant. * * ’ ”
“The doctrine of res ipsa loquitur is applied where, by reason of the mere happening of the accident, defendant is in a better position to explain its occurrence than the plaintiff, Loprestie v. Roy Motors, 1938, 191 La. 239, 185 So. 11, 13(7).
“That is not the case here. Bujol v. Gulf States U. Co. [La.] App. 1st Cir., 1933, 147 So. 545, 548, (3) holds that: ‘ “the doctrine allows a presumption of negligence, on the part of the defendant, as arising under certain circumstances, but has no application where it is clearly shown that the deceased was killed by his own negligence.” ’ This decision has peculiar application to the case at bar.”
Counsel for plaintiff on the plea of res ipsa loquitur has the following to say in his brief:
“The applicability of the doctrine of res ipsa loquitur is to be determined by the court on the conclusion of the trial, and we now propose to discuss the many reasons why this doctrine is particularly applicable in the case at bar.
“The plaintiff very frankly and unhesitatingly testified that he had no recollection whatsoever of what happened at the time he sustained the injury and sometime prior thereto.
“It cannot be successfully contended by the defendant that it did not have superior knowledge as to the happening of the causes that brought about the accident and the injury entailed thereby. The process of unloading prior to the accident had been conducted exclusively and was under the sole control of the employees of defendant company, and up to that time, consisted of one man, an employee of defendant corporation, getting on the truck driven by plaintiff and hitching the chain from the hoist to the chain that bound the cane together, and then the operator of the hoist, in lifting the cane to deposit it on the pile in the yard of the factory. The plaintiff had nothing whatsoever to do with the part of the unloading; and, as he was so seriously injured during the unloading process and re *227 members nothing of the happenings that caused his injury, the employees of plaintiff’s (defendant’s) company were certainly in a vantage position to explain to the court the happenings that brought about the accident and the injuries sustained by the plaintiff.”
It is true that the employees of the defendant had complete charge and control of unloading the Breaux truck which was in charge of the plaintiff. However, the record is devoid of any testimony that shows any negligent act by such employees in the unloading process. On the other hand, it is shown that the breaking of the chain could have been due to the negligence of Breaux’ employees when they loaded the cane in the field, therefore the employees of the defendant company whom the record shows committed no negligent act in unloading the cane were not in a “vantage position” to explain to the court the happening that brought about the accident if-it was due to negligence on the part of the employees of plaintiff’s employer, Breaux.
For the doctrine to be applicable in this case it would be necessary for the facts to show that the defendant company had complete charge of the loading as well as the unloading of the cane.
Counsel for plaintiff in his brief argues that if the accident was caused by the negligence of Breaux and/or his employees, that the doctrine laid down by this court in Edelmen v. Refrigerator Equipment Co., Inc., 72 So.2d 627, is applicable and the defendant still cannot escape. In that case it was held that where the negligent acts of two parties “were each a concurring, contributing and proximate cause of the accident”, each or both were liable. This case is not applicable to the facts in the present case for there was no negligent act committed in the process of unloading this cane by the defendant company which was concurrent, contributed to or rívas a proximate cause of the accident. This could have come about if Breaux’ employees had twisted the chain and then the defendant’s derrick man in lifting the cane had swung it and applied his brakes so as to cause the load to jerk and put extra pressure upon this chain, then the cited case would be applicable, but the proof insofar as the manner in which the cane was unloaded is all to the contrary.
The many cases cited by able counsel in his exhaustive brief which dealt with the doctrine of res ipsa loquitur are' not applicable to the case at bar for the defendant company did not have complete charge of the loading of the cane in the truck so as to be responsible for a twisted chain or any other negligent manner in which this cane might have been loaded.
The alternative plea of negligence on the part of defendant as charged by the plaintiff in his petition, 'supra, which are designated (a) through .(f) are not sustained by the proof in this record.
The testimony shows that the cane was not lifted - over the front cab of the truck where the -driver -was standing but was lifted three feet to the rear of the cab, whereas the driver was standing in the front of his truck, nor is there any proof of the charge contained in Paragraph (b) that the derrick hoist was recklessly and carelessly operated by the sudden release of the clutch and application of the brake, causing the load to jerk and break the chain. The charge contained in (c) that the defendant company failed to park the truck in a safe position so that the cane could be removed by hoist without passing over the cab of the truck and the driver of the truck is not proven. Neither is the charge contained in (d) that the defendant company requested the driver of the truck to stand near the cab, “an inherently dangerous position”, for the purpose of unhooking the chains' after the cane had been dumped and replacing the chain in the truck. It is shown that the driver was not required to: stand any particular place except that he was supposed to get out of the cab and go a safe distance. It is true that at defendant’s mill, unlike the .practice at some other mills, the driver of the truck unhooked the chain after the cane had been dumped and replaced his chain in his truck. ■ However, there was no require *228 ment that the driver of.the truck stand in a dangerous position for. this purpose, hut there is testimony that.the drivers were in a hurry to make, another load and usually rushed in to get the chain. .The position in which the plaintiff was standing at the time he was injured was where some of the plaintiff’s witnesses said it was customary for a driver to stand, at. the front of the truck. In this position the cane did not pass over his head and if the chain broke the driver remained unhurt by the falling cane. In fact, this is the only accident in which the chain struck a driver standing in front of his truck according to the testimony in this record.
Counsel for plaintiff criticized a statement of the Lower Court in its written reasons that no driver was ever injured at the defendant’9 mill prior to this injury “even though two or three chains broke every day. The defendant can hope to find no solace in the fact that no prior injury occurred. The Court held in the case of Chavers v. A. R. Blossman, Inc. [La.App.], 45 So.2d 398, that the consequences of negligence are always invariably surprises and that a man may be negligent in a particular matter a thousand times without mischief, yet, though the chance of mischief is only one in a thousand, the court would continue to hold that the mischief, when it occurs, is imputable to the negligence, quoting from Wharton Law of Negligence, 2d Ed., 77. In that same decision the Court referred to the case of Payne v. Georgetown Lumber Company, Ltd. [117 La. 983], 42 So. 475, in declaring that the particular injurious consequence was improbable or not to be reasonably expected was of no defense *
“Negligence @~559. The General doctrine of foreseeability ■ is not applicable to the extent of relieving one who sets in motion, through the agency of the negligent act, a chain of circumstances leading to the final resultant injury.” Chavers v. A. R. Blossman, Inc., 45 So.2d 398, syl. 4.
Counsel’s criticism is not well taken for there is no proof that the defendant set in motion through the agency of a negligent act a chain of circumstances leading to the plaintiff’s accident and injury.
The charge contained in Paragraph (e) is not shown to have contributed in any manner to the plaintiff’s accident and injury.
As to the charge referred to in Paragraph (f) that the defendant was negligent in not providing safety measures for the protection of the cane drivers engaged in this operation, which was a dangerous one, knowing that said operation resulted frequently in the breaking of chains during the unloading process, counsel for plaintiff contends in his brief:
"The employer is certainly chargeable with the knowledge of its employee, the hoist operator, and since it knew of the very dangerous situation connected with the unloading process by the breaking of chains several times a day, it certainly should have taken necessary safety measures to guard against injury of those bringing cane to the factory.
“As we stated before, where dangerous agencies are employed, it is necessary that the operator use care commensurate with the danger so as to eliminate injury resulting to persons or damage to property in the vicinity. This is very forcibly brought out by the case of Prescott v. Central Contracting Co., 162 La. [885], 886, [111 So. 269] from which we quote as follows :
“‘2. Negligence ©^ló — Persons employing dangerous agencies must use care commensurate with danger.
“ ‘Those who employ agencies, which may endanger persons or property, must use care commensurate with the ■ danger and risk reasonably to be apprehended.’ ”
As previously stated the testimony shows that most of the truck drivers customarily stood in front of their truck as this spot had always been a safe position until this particular accident occurred.
*229 Can it be said 'under the facts that the defendant did not use care commensurate with the danger and risk reasonably to be apprehended when it required its drivers to get out of the cab of their truck and out of the way of the bundle of cane while in the process of lifting it from the truck and placing it on the stack ? While chains broke frequently to the knowledge, we feel sure, as found by the trial judge, of the plaintiff and defendant and all other employees engaged in the loading and unloading of these cane trucks whose presence was required during the unloading process as was plaintiff in this case, this was the first time that an accident such as happened to plaintiff had occurred. Therefore, under the facts in this case defendant could not have reasonably apprehended any danger or risk to a driver standing in front of his truck.
Assuming merely for the sake of argument that the defendant was guilty of negligence, it would then be necessary to decide whether the plaintiff should be denied recovery on the ground of assumption of the risk or contributory negligence. We agree with the finding of the District Judge on this point and quote from his written reasons denying plaintiff’s recovery on these grounds, as follows:
“As far as this Court can see, plaintiff’s injury was due solely and proximately to his own negligence and assumption of risk, in standing where he did. Plaintiff is an intelligent man, he had delivered cane to Vida’s mill for a number of years; he knew that there is danger in hoisting cane from the truck to the carriage or to the pile; he knew that chains broke continually ; and the Court is bound to conclude that he, as well as all other drivers, knew of the dangerous operation of hoisting and swinging cane and that he should have done what the other' drivers did — remove himself to a place of safety, which he could have done very easily...
“Proximate cause is well defined in Gay v. U[nited] S[tates] F[delity] & G[uaranty] Co., [La.]App 2 Cir. 1954, 76 So. 2d [60] at Page 64:
“ * “A comprehensive definition, and one which is, perhaps, most often stated, is that proximate cause is any cause which in natural and continuous sequence, unbrolien by any efficient intervening cause, produces the result complained of and without which the result would not have occurred, and from which it ought to have been foreseen or reasonably anticipated by a person of ordinary prudence in the exercise of ordinary care that the injury complained of, or some similar injury, would result therefrom as a natural and probable consequence.” *
“As I said before, the case of Bujol v. Gulf States U. Co. clearly holds that the plaintiff cannot recover on account of his contributory negligence and assumption of the obvious, known (to him) danger.
“I refer to the many cases cited in 14 La. Dig., Dart, ^20, commencing at page 79, on contributory negligence and imputed negligence, especially those holding:
“ ‘To constitute contributory negligence, it must be shown that plaintiff voluntarily and unnecessarily exposed himself to a known danger.’
“ ‘Contributory negligence is act or omission of plaintiff amounting to want of ordinary care, which, concurring with negligent act of defendant, is the proximate cause of injury.’
“ ‘Where plaintiff contributes to accident by his own want of ordinary care, he may not recover damages against defendant, who may have been negligent.’
“ ‘Negligence is contributory in a legal sense, when and only when it is a proximate cause of the injury, and if such contribution exists in the least degree there can be no recovery.’
“ ‘In action by experienced air-craft inspector for personal injuries sustained in fall from ladder, which was wobbly and did not have hand-holds, plaintiff was held to have assumed the risk by using the defective structure with knowledge of the defects.’
*230 “ ‘Where one goes on premises by implied permission, he assumes responsibility of all risks incident to the place.’
“ ‘In order to charge an injured person with contributory negligence, it must be first shown that he should reasonably have apprehended the danger which threatened him.’
“ ‘Where plaintiff had been taking wood from a certain place for 20 years and was familiar with the situation, he was negligent in putting himself within range of falling pieces of wood.’
"This last statement is taken from the case of Little v. A. Wilbert’s Sons’ L. & S. Co., 1917, 142 La. 122, 76 So. 582, and this case also has peculiar application to the case at bar.
“As to the duty of Vida to the plaintiff, as Vida’s invitee, and invitee’s contributory negligence, see: 65 C.J.S., [Negligence] § 50, Page 541; Corpus Juris, Vol. 45, verbo Negligence, Sec. 237, and Sec. 244; Regenbogen v. Southern Shipwrecking Corp., [La.]App. Orleans 1940, 41 So.2d 110, 112.
“This last case is cited with approval in Fradger v. Shaffer-Stein Corp., [La.]App. 2d Cir. 1954, 73 So.2d 612, 614, 615 and 616.
“In view of all of the above, this Court can only conclude that plaintiff, an intelligent, mature man, exposed himself carelessly to a known danger and to a danger which was obvious to anyone and should have been observed in the exercise of reasonable care. He cannot recover, even if it should be held that defendant Vida was negligent.”
Plaintiff, in argument and brief to this Court, complains of the statement of the trial court that plaintiff had delivered cane to Vida’s mill for a number of years, and urges that he had only three weeks experience as a truck driver, and so' far as the record shows had no knowledge that the condition was dangerous. It is shown that plaintiff hauled his own cane for about thirty days in 1946 and hauled for about two weeks in 1948 and in 1952 for one week and two days, and, in addition, every employee and official who testified admitted that it was a very hazardous operation and the District Court found: “The danger from the operation was obvious, apparent and well-known by all.”
We agree with the District Judge that plaintiff had sufficient knowledge and experience so as to be cognizant of and chargeable with the danger in the unloading operation.
For the above and foregoing reasons the judgment of the District Court is affirmed.